Good morning, your honors. May it please the court. My name is Andrew Wheaton. I represent 12 defendant police officers in this case, with respect to 8 of which the plaintiffs concede in their complaint that despite years of discovery, they have no evidence and are unable to allege any facts that those 8 were even on the bear, the police tactical vehicle, at the time of the alleged unconstitutional deployment of a tear gas canister in this case. With respect to those 8 officers at least, the analysis for this court should be fairly straightforward. They are subjected to being defendants in a lawsuit in contravention of established Supreme Court precedent and basic principles of qualified immunity. With respect to the other 4 defendant officers, the plaintiffs do not allege any facts sufficient to establish that any one of those 4 officers committed a constitutional violation in this case. And so this court can and should simply find that the plaintiffs failed to state a claim against those 4 officers such that qualified immunity applies under the first prong of the qualified immunity analysis. The plaintiffs do not allege that any particular one of those 4 officers deployed the canister, only that they were on the bear at the time that someone did. But it's not a clearly established constitutional violation to be on a police vehicle at the time that someone deploys a tear gas canister. Especially where, under the circumstances alleged here taken in the light most favorable to the plaintiff, the plaintiff was not engaged in any protected First Amendment activity at the time of the alleged deployment. In fact, the plaintiff alleges in her complaint that the deployment of a tear gas canister at issue was, quote, random. She says that on the first page of her complaint. She also alleges that the deployment was indiscriminate, which by definition means it was untargeted, not discriminatory. Now, of course, in the real world, the defendants vehemently disagree with the assertion that they were indiscriminately deploying tear gas canisters at anyone who happened to be on Lindle that night. But we are confined to the factual allegations that have been made by the plaintiff in this case. And that's what the plaintiff alleges. We don't agree that that's what happened, but that's neither here nor there for purposes of this argument. Does it make any difference that the plaintiff alleges that she was basically mocked or heckled, and then the bear turned around and came back and then shot tear gas at her? Does that implicate any First Amendment question? No, Your Honor. Especially not with respect to the individual defendants that are being sued in this case. They were not the ones that allegedly mocked or heckled the plaintiff here. And it's axiomatic that Section 1983 liability is personal. And it requires personal involvement in the specific constitutional violation that's being alleged. And, of course, there is none being alleged in this case because there are no facts that any one defendant deployed the canister at issue. And even if there was, there was no clearly established First Amendment violation. And, in fact, as a preliminary matter, the defendants in this case have argued that there was no clearly established First Amendment violation. And the defendants submit that there can be no First Amendment retaliatory use of force violation under the Supreme Court's holding in Graham v. Conner, where it held that all uses of force by a police officer must be analyzed under the Fourth Amendment and under its objective reasonableness standard. What about this Qureshi case? That was a tear gas case. And there was a, and the district court, I mean our court, rejected the argument that you're making right now, didn't they? They said there can be a First Amendment violation if you tear gas somebody in retaliation for exercising their First Amendment rights. The court did say that. However, I'm not aware that anyone in Qureshi argued that there is no cognizable First Amendment retaliatory use of force claim. And that's what the defendants assert here. So, as I understand it. Well, but, I mean, you have exactly the same thing. You're tear gassing people. I don't understand how the, I'm not understanding the difference. Well, the difference is that the argument we're raising was not raised in Qureshi, which is that uses of force by police officers are confined to a Fourth Amendment analysis. Nobody raised that argument in Qureshi, and so this court did not consider it. Well, they did consider a Fourth Amendment analysis. And they said use of tear gas is not a Fourth Amendment violation. At least not under clearly established law, correct. Yes, Your Honor. So, with respect to Qureshi, of course, we understand and respect the court's holding in that case. But we submit that, had the argument been made in that case, that there is no cognizable First Amendment retaliatory use of force claim. Because you only have to consider that under the Fourth Amendment. That the court should not have even reached the First Amendment factors that it assessed in Qureshi. And Qureshi was decided, of course, years after the alleged use of force in this case, such that it can't be used to clearly establish constitutional law that the defendant officers could have been aware of at the time of the alleged deployment in this case. But the deployment of tear gas in Qureshi occurred before the tear gassing in this case, and they said it was clearly established. As of the time they used the tear gas in Qureshi. We'll concede that, Judge. But Qureshi was different on its facts. Qureshi involved reporters who were reporting, who were clearly engaged in protected First Amendment activity. Which brings us to the point in this case that there was no clearly established First Amendment activity being engaged in by the plaintiff at the time of the alleged deployment. The complaint, as best as I can discern from the First Amendment claim, focuses on that the plaintiff observed protected First Amendment activity in an earlier protest. And so we'll point out that observing police conduct is not clearly established First Amendment activity in and of itself. Now, in recent years, courts of appeal across the country have trended towards holding, and several have, I think even the majority now have, held that recording police activity is protected First Amendment conduct. But still not clearly established that simply observing police activity is First Amendment conduct. And even if it were, observing police activity at an earlier protest is really irrelevant for purposes of the court's analysis in this case. Because as far as the defendant officers knew, under the facts alleged in the complaint, Ms. Green and the people that she were with were not engaging in any First Amendment protected activity. They were just walking down the street. And under the allegations that the plaintiff has asserted in this case, she was just going home. And that's not protected First Amendment activity. If we assume that this was just an unprovoked random tear gassing for no reason, I think you would be right. There would be no constitutional violation. But wouldn't there then be a violation of Missouri statute? Well, there could be, of course, a common law assault claim. Or even perhaps a battery claim, though I don't think so. But just because there could be a common law assault claim does not create a constitutional violation under Section 19. I agree with that. What I'm saying, though, is that they've alleged violations of Missouri statute in addition to the constitutional claim. So isn't it almost become either or? If it's not retaliation, then it's at least arguable that it's a violation of Missouri statute? If it's just a random, I'm just going to go down the street, tear gas everybody I see, isn't that a violation of Missouri statute? Yes, it's an assault. It's not a constitutional violation. So they're different. And to the extent that you're asking whether we can consider them together, no. But that's correct. I think we're in agreement that there could be an assault under Missouri law, but no constitutional violation. And it appears to me that that's what they've alleged in this case. Now, the question of whether they were just randomly tear gassing individuals on the street, of course, we disagree with that in the real world. We also assert in the context of the facts pleaded by the plaintiff, taken in the light most favorable to her, that it is far more plausible that the deployment of tear gas was being used to disperse splinter groups that were leaving the scene of an unruly and unlawful gathering that had occurred earlier that evening. And under Bernini, it's not a violation of clearly established law to continue to attempt to disperse splinter groups of people if they're leaving the scene of an unlawful assembly. So even if we take that analysis under this court's recent decision in Mitchell, it's just not plausible that the tear gas deployed here was for retaliatory purposes. Instead, it's plausible under Iqbal and Twombly that the deployment was to disperse a group that there was probable cause or at least arguable probable cause to believe was leaving the scene of an earlier unlawful assembly. And that's not a violation of clearly established law either. So no matter how many alternative arguments you go down on this route, this court has ample grounds on multiple fronts to overturn the district court's decision in this case. Sometimes I'm kind of a slow listener and don't follow exactly what's been argued. But I look at count four and count five of the second amendment complaint. And it seems to suggest that there are independent state claims for assault and an independent state claim for intentional infliction of emotional distress. And then there's count six, which is an independent state claim for negligent infliction. And don't those all survive in Judge Malloy's example of the sort of randomly driving around and just tear gassing guys for sport? They could if not for official immunity, which of course we raise in this case also. And the decision to use force under these various circumstances is unquestionably discretionary under controlling Missouri Supreme Court law. And in particular under the Missouri Supreme Court's recent decision in Alsop versus Knatsar. So official immunity applies to a discretionary use of force under Missouri law. That's well established. And so this was a discretionary use of force by these officers, which does defeat the state law claims on official immunity grounds. Moving back for a moment to the protected activity question, we submit that Colton versus Kentucky is instructive in controlling on this point. That in Colton, a protester was leaving the scene of an earlier protest and actively engaged a police officer issuing a citation to another person in conversation and spoke to them. And the Supreme Court emphatically said that's not protected First Amendment activity, notwithstanding that you're leaving the scene of a protest, notwithstanding that you're arguably a protester. And in a case where they spoke, they said something to the police. And Ms. Greene said nothing to the police before she was allegedly tear gassed by an unidentified officer. So Colton's controlling. And on the issue of whether there's a cognizable First Amendment retaliatory use of force claim at all, I'd like to draw the court's attention to Batyukova versus Doege, D-O-E-G-E, which is not cited in our brief, but I will file a Rule 23 letter on this point. It's 994F3D717, where the Fifth Circuit in 2021 recently questioned whether you can have a cognizable First Amendment retaliatory use of force claim at all. We argued in our brief that if you accept the plaintiff's reasoning, any use of force by a police officer or against anyone could subject them to a retaliatory use of force claim. And that's just inconsistent with established precedent. And I'll note that in Batyukova, they cited to this court's decision in Anderson versus Franklin County, which is 192F3D1125. I'll include that in the letter, where this court held that a use of force after somebody effectively talked back about the issuance of a search warrant was subjected to a use of force. This court held, well, that's a Fourth Amendment claim, not a First Amendment claim. You don't have a First Amendment claim. And that's what the court should find in this case. I'd be remiss if I didn't very briefly address the intracorporate conspiracy doctrine. I think Falk versus the City of St. Louis controls its disposition. Interestingly, the decision in that case should also control disposition of the personal involvement question in failing to state a claim against the individual defendants. We reject the plaintiff's assertion that we should trust them, that they're going to dismiss their claim when it goes back to the district court. We're entitled to a ruling from this court that issues properly before the court. I'll reserve the rest of my time for rebuttal, if I may. Very well. Thank you. Mr. Price? Good morning, Your Honors. My name is Omri Price. I'm here on behalf of Appellee Megan Green. Very briefly, you're familiar with the facts, but the key operative facts, taking the light most favorable to my client, is that after a protest, after she was in a synagogue for a while, waiting for things to calm down, she has permission to cross the street to get back to her car. And as she was doing so, an armored vehicle known as the Bair went past her. It then abruptly makes a U-turn, comes back towards her, and indiscriminately fires tear gas at her. Those are the key operative facts. And our position is that assault, whether viewed in a constitutional violation or under state law, was purely gratuitous and punitive. She was not doing anything illegal at the time, and she didn't observe any crimes being committed. Now, we have 12 officers who have been sued here. We have four of them that I'm referring to them as the confirmed Bair defendants, because the city has confirmed that those four officers were inside the Bair at the time. We have another eight, which I refer to in my brief as the unresolved Bair defendants. The first question that the opposing counsel did not address, it's a question that came to me as I was writing the brief, and that is whether this court even has jurisdiction over that issue. And I hesitate because I'm aware that, for example, in Falk, you had a similar situation, and this court jumped to the conclusion that it had jurisdiction and applied de novo. So that's where I began my analysis, but then I thought about it. The standards are very clear. This court has repeatedly said that interlocutory appeal is a vehicle of limited capacity, and the issues have to be inextricably intertwined with the qualified immunity in order for the court to have jurisdiction. And the standard is if the resolution of the two issues requires entirely different analysis. So that's the key inquiry. And as I did my research, I came across at least two instances where this court has recognized, and I cited in our brief, and I quote, in some circumstances, limited discovery may be required to resolve the qualified immunity analysis. It's not a black, bright-line rule. There are exceptions to the rule that sometimes the district court, in its discretion, could say, you know what, unique circumstance here, I'm going to allow some limited discovery before addressing qualified immunity, which is exactly what happened here. And I would argue if the district court, the question is whether the district court properly exercised its discretion or abused its discretion. That is not an issue that, it's an issue that the resolution of which clearly did not require the qualified immunity analysis of constitutional injury, harm, and clearly established. But once the limited discovery has been done and you still haven't identified any act tying these eight individual defendants to the alleged bad act, aren't they subject to being dismissed? I mean, how much discovery do they have to do? Well, it's a great question. So I'm going to move right to the next question to explain why I think the district court did not abuse its discretion here. The facts in this case, Your Honor, first of all, I would point out in the Solomon case where, just for what it's worth, the Eighth Circuit specifically affirmatively cited two district court opinions that are very instructive. There's the Keough case from 2010 where the court, district court, granted limited discovery with respect to qualified immunity issued to determine to what extent, if any, and I quote, defendant style personally failed to train or supervise the other defendant with respect to the incident. That's the inquiry we're trying to do is determine which of these eight officers were or were not involved inside the bear. The second case that the district court Eighth Circuit cited there is Simmons, again, where the court held in the context of summary judgment additional discovery was merited. Why did the district court, to answer your question, Judge Erickson, allow additional discovery here? It recognized that this case was fundamentally different than Street right at the outset. It distinguished it in a lengthy quote. Recognizing that Street, we're talking about 300 or so police officers that were identified collectively as a group with bear allegations. The court said, here, they've already, the plaintiff, and the screen has narrowed it down to eight, 12 officers, four of which we know were on there. So we're just looking at eight. But more importantly, I really want to emphasize Falk to really address your concern, Your Honor, head on. In Falk, this court said, hey, you had extensive discovery. And at the end of the day, after a 30 v. 6 deposition, you only came up, there's no factual basis. And I quote, the Eighth Circuit said, to infer that Officer Wood was personally involved in a constitutional violation. The reason it did that is the plaintiff in Falk had a 30 v. 6 deposition. And at the end of it, the 30 v. 6 designee made it clear, identified the team of arresting officers. And Officer Wood was not one of them. That was determined. And all it was, was Officer Wood was basically responsible for holding a bike as an evidence. In this case, fundamentally different. First, we have in the record the city's admission, and I quote, that they say that at least four officers were inside the bear. The words at least tell us we can infer that more than four and some other people, officers from the group of eight, were inside. We know that some of them, I don't know which one of those eight, but they've admitted that to us. We also have the case of Molina, which is pending before the Eighth Circuit. And I would ask you to take judicial notice of the district court opinion where the court specifically states that there are eight officers typically inside the bear. Again, circumstantial evidence that we know that typically we need eight officers inside the bear. We've identified four that the city admits were in there. There's another eight. I would bear to say there's more than likely another four of those eight were inside. How long has this case been pending, though? Well, with this thing trying to- I mean, you haven't even identified the names of any of the eight in- No, we've identified all. We know the names of all 12 officers. We know the names of the eight officers. And most importantly, we scheduled the deposition of those eight officers in this case. And the minute we did it, what did the city do? Very simple. They don't want to go that route. We wanted those depositions to answer the question. And they filed an electoral appeal, and here we are. Time has gone by. They used the electoral appeal as a mechanism to shut down the necessary discovery that we wanted to do. Because in this case, it's clear you can infer. I want to read to you two excerpts from the 30B-6, which was the reason why we wanted to do those depositions. And this is in the record, Eppley Appendix 153. On page 19, lines 17 and 18, question. What was their position on whether they were in the bear? Lines 24 and 25, answer. They all conceded that at some point they were most likely on the bear. All eight of them conceded they were most likely on the bear. You go down to page 20, lines 22 to 25, question. Do any of them specifically confirm that they were on the bear at some point that evening? Answer. Many of them said they were on the bear at various points that evening. Yes. So to answer any questions you have, this is not Falk. We have a 30B-6 who's telling us, I met with these officers, these eight, and many of them are telling me that. We want to depose them all. That's the normal thing you would do in a civil case. Depose the officers under oath and say, where were you on it? Let's go through circumstantial evidence. Let's look at records the police have. Let's look at e-mails. What did they do? They abused, I hate to say it, the intellectual appeal to shut down the necessary discovery, and the district court just granted that relief, and they said, uh-oh, that's going to hurt us. I'd like to move on, Your Honor. Can I ask just one more question about just the bear itself? I mean, the city is arguing, of course, that just being on the bear itself doesn't make you guilty of shooting the tear gas. And so I appreciate you bringing that up because it's my first notes from my argument today. Today, for the first time, I would ask you to read the briefs to the district court and the briefs to this court. At no time has the city argued that it's not clear who deployed the canisters, and that's a basis for dismissal in this case. That's an argument they've raised. They're familiar with it. They've raised it in Molina. I'm familiar with that brief as well. That was never raised that the district court didn't consider, and I would argue that that argument is going to fail because the use of force by the police department requires them to record whenever they're using tear gas. To the best of our knowledge, in this case, they used tear gas, but conveniently, there is no police report that identifies the officers. We will argue that gives a negative inference that allows us to apply that against all of them. That's an issue that the district court never considered, and you should not consider it because it was never briefed to anybody below, in the district court or appellate level. With respect to the First Amendment, very quickly, I think their whole argument is it's a straw man argument suggesting that, hey, the protected activity ended, and there's no case on point, supposedly, that the time period has passed. As the district court recognized, causation is fact-sensitive inquiry, and when you have a bear, an armored vehicle, make an abrupt U-turn and it's tear gassing people, there's a causation issue here, especially when you would hope they don't just arbitrarily tear gas people crossing the street to get to their cars. I think they argue, again, about none of the reported cases support the unique facts in this circumstances. I would point out, one, in a case that's been mentioned quite a bit, Kirashi, if I'm pronouncing it correct, this court said that in cases, an exact match is not required if the constitutional issue is beyond debate. The constitutional issue in this case, the protected activity, is participating peacefully in a protest. No question. That is, they're not arguing that that was not beyond debate established by Supreme Court and 8th Circuit President for decades. The whole issue they're arguing is a causation issue, not the protected activity. And, again, that is a fact-sensitive inquiry, definitely not appropriate on a motion to dismiss. I understand they're also arguing that it wasn't a peaceful protest, that it was an illegal protest, and this was part of the dispersion of the protesters. Again, that's viewing the allegations in the light most favorable to them rather than appropriately. The standard review requires that here you have somebody just leaving after it's peaceful, asking permission to cross the street to go to a car, receiving permission, and walking and getting tear gassed. Those are inquiries that, in depositions, will determine what the scene was like at the time of tear gassing. Finally, I want to address this whole issue about the Fourth Amendment that they bring up. One, it's clear that analysis of the Fourth Amendment is fundamentally different than the First Amendment. I think, I'm not sure which of your honors raised that point, but recognizing it, this court has recognized, both in the Peterson case and Karashi, that it's fundamentally different, that in those situations the courts granted, affirmed the dismissal of a Fourth Amendment claim while allowing the First Amendment claims to continue. The analysis, the elements are fundamentally different. I would also argue the fact that in this case we don't have- You don't have a Fourth Amendment claim here, do you? We dismissed it ourselves, and the reason we dismissed it is in light of Karashi. We told the court, look, it's no longer viable. But in doing so, Karashi stands for the principle that the tear gassing is not a seizure. We recognize that applies to us under the clearly established prong. At no point did we say that the use of force was reasonable, and that's the reason we dismissed it, and the district court never said it. So their whole argument that somehow the force here is reasonable and therefore First Amendment claim fails is it presumes a ruling by the district court that doesn't exist here. And finally, I would point, they spent a great deal of time in their reply brief citing to the Supreme Court case in Neves. And they state, and I quote this, they say at page 17, Neves leaves the law regarding First Amendment retaliation unsettled in those instances where the use of force by the officer is objectively reasonable. I would urge the court should exercise its discretion not consider that argument. They never cited to Neves in their motion to dismiss. They never cited to Neves in their opening brief to this court. I'm reading their reply brief and go, oh, my God, four pages are allocated to this one case. Interesting. But when you read Breach, Neves, you realize very quickly it was limited solely to First Amendment retaliatory arrest. And I emphasize the word arrest cases. Judge Gwinder, you are familiar with that in the Just v. City of St. Louis case. You guys cited, the court cited to Neves, and I quote, like a Fourth Amendment claim for wrongful arrest, a First Amendment retaliatory arrest claim is defeated by showing probable cause or arguable probable cause. When you have an arrest, yes, Neves applies. She was never arrested here. Got tear gassed and they drove off. Neves has no application here, but you should not consider it would be my position. On official immunity, once again, we've cited many times, but Kurashi is directly on point. It's actually, it's stronger facts here because that was on summary judgment, and this court recognized that the bad faith allegation for purposes of official immunity survives when you can infer that the officers acted in bad faith. In that case, the party had to come forth with evidence because it was summary judgment. Here you just have to look at our allegations. And when you look at the allegations, as the district court recognized, the unnecessary use of force against non-resisting individuals under these circumstances when the evidence is that this bear, and I started the argument with this and I'll pretty much end with it, does an abrupt U-turn as people are just walking across the street to their cars, gives you a good basis to infer that bad faith and it was done intentionally in a malicious manner. Is it really evidence of bad faith or malice? Isn't the malice thing is that when an officer does something that a reasonable officer would not do from which you can infer malice? Isn't that it? I got it. I think that the standard is that it's acted in bad faith or from an improper or wrongful motive. That's the standard for purposes of surviving sovereign immunity, official immunity claim. I hate to do this, but the quote I've got, and I don't remember where it came from, I just got it jotted down, says, The officer must do that which a man of reasonable intelligence would know to be contrary to his duty. And to undertake such action. I apologize, I don't recognize that language from the case. I'm looking right at the, I have in front of me the quote from Karashi where it says that it could be reasonably inferred that the defendant acted in bad faith or from an improper or wrongful motive. And I would argue the district court here probably looked at the allegations with the proper standard review and made that determination. It's no big deal. I was just thinking it was malice. Out of time, but I appreciate your questions. Thank you. Thank you, Mr. Price. Mr. Wheaton, your rebuttal. Thank you, Your Honor. A few quick points. First, on official immunity, if this deployment of tear gas had been on a regular normal day, maybe you could infer bad faith or malice from that. But this occurred on a weekend where the plaintiffs acknowledged in their complaint that there were violent protests, that it was chaotic. There's an allegation in their complaint that the protests that weekend were, I think, almost exclusively nonviolent or something to that effect, which concedes that some were violent and we know that some were. So under those circumstances, it would be improper to infer bad faith or malice from a deployment on this evening, particularly since there was a large dispersal of a crowd earlier that day, which the plaintiffs do not appear to challenge that dispersal in this case. Now, with respect to the issue of discovery, respectfully, the district court and the plaintiff's argument here is backwards. You state a claim first. You state a claim, and then if you've stated a claim, before summary judgment might be considered or you dispose of it entirely, the district court can allow limited discovery. But they didn't state a claim, and that's the whole point. And it's part of the qualified immunity analysis, which this court has jurisdiction to hear. They say that the city has confirmed that four officers were on the bear, and that is not a fact that those four were personally involved in any constitutional violation. It's a statement by a third party that they've confirmed something. That's not a fact. With respect to causation, Nieves is on point and held that there are problems of causation in particular cases, just like this one, and looked back at Hartman v. Moore to say that problems of causation required a probable cause analysis in a retaliatory arrest context, not a use of force context, which this is. And again, we assert that there can be no cognizable retaliatory use of force claim because its analysis must be confined to the Fourth Amendment. Unless there are any questions, I'll thank you very much, Your Honors. Thank you, Mr. Wheaton. The court appreciates your appearance today and your arguments. The case is submitted, and we will issue an opinion in due course.